IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HASAN ALADDIN HADID, | ) |
| | ) |
| Plaintiff, | ) CASE NO. 1:16-cv-11760 |
| | ) |
| v. | ) Hon. Judge John Robert Blakey |
| | ) |
| ALLY FINANCIAL, INC., | ) Hon. Magistrate Judge M. David Weisman |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO STAY**

Defendant Ally Financial Inc. ("Ally" or "Defendant"), by counsel, submits this Memorandum in Support of Motion to Stay (ECF No. 16). For the reasons stated below, Defendant's motion should be granted.

Ally respectfully requests that the Court stay this action pending resolution of a lawsuit challenging the Federal Communications Commission's ("FCC") July 2015 Declaratory Ruling and Order, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (July 10, 2015) (the "2015 FCC Order"), which interprets the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). The issues raised by the lawsuit challenging the 2015 FCC Order are directly relevant to this litigation and have been fully briefed and argued before the United States Court of Appeals for the D.C. Circuit.

**INTRODUCTION**

Plaintiff Hasan Aladdin Hadid ("Plaintiff") alleges that Ally violated the TCPA by calling his cellular telephone using an automatic telephone dialing system ("ATDS") after he directed Ally to stop calling his cellular telephone in August 2016, on September 11, 2016 and on October 12, 2016. (ECF 1, Compl. ¶¶ 13, 16). To prove his TCPA claims, Plaintiff must

30525392

show that Ally used an ATDS to call his cell phone, and that his purported oral revocation of consent sufficiently revoked his prior express consent under the TCPA.

The TCPA was enacted in 1991 to prevent abusive telemarketing calls and is interpreted periodically by the FCC, the entity charged with rulemaking authority over the TCPA. On July 10, 2015, the FCC formally issued the 2015 FCC Order,[1] which interprets numerous provisions of the TCPA and expands the law's scope in several areas. Shortly after the 2015 FCC Order was released, nine companies (the "Petitioners") filed petitions in the D.C. Circuit[2] seeking review of the FCC's determinations. The petitions were consolidated into *ACA International v. FCC*, No. 15-1211 (D.C. Cir. filed July 10, 2015) (the "Challenge Lawsuit").

The Challenge Lawsuit requests that the D.C. Circuit vacate or amend the 2015 FCC Order on a number of issues, including the definition of an ATDS and the FCC's broad interpretation of what constitutes sufficient revocation of consent, both of which are relevant to this case. Specifically, the two issues before the D.C. Circuit that are also central to this action are:

> (1) Whether equipment constitutes an ATDS if it merely has the potential to randomly or sequentially generate telephone numbers to be dialed; and

> (2) Whether the FCC unlawfully imposed an unworkable regime for handling revocation of consent by ruling that any revocation, whether verbal or written, would be sufficient so long as it was "reasonable" under the circumstances.

If the Challenge Lawsuit is decided in Petitioners' favor, it could be dispositive of Plaintiff's TCPA claims, eliminating the need for time-intensive and costly discovery and summary judgment proceedings. The D.C. Circuit's decision on the above issues could also substantially alter or narrow Plaintiff's claims, as well as the scope of permissible discovery.

---

[1] The 2015 FCC Order is available electronically at: https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.

[2] Pursuant to the Administrative Procedures Act, 47 U.S.C. § 402(a), the D.C. Circuit has exclusive jurisdiction to vacate the FCC's declaratory rulings.

The challenges to the 2015 FCC Order favor a stay of this case pending resolution of the Challenge Lawsuit.

In the last year, federal district courts all over the country, including district courts in the Seventh Circuit, have stayed similar cases pending the D.C. Circuit's decision whether to vacate or amend the 2015 FCC Order on these issues. *See, e.g.*, *Ankcorn v. Kohl's Corp.*, No. 15-cv-1303, 2017 U.S. Dist. LEXIS 12149 (N.D. Ill. Jan. 30, 2017) (; *Reynolds v. Time Warner Cable, Inc.*, No. 16-CV-6165W, 2017 U.S. Dist. LEXIS 10462 (W.D.N.Y. Jan. 25, 2017); *Rajput v. Synchrony Bank*, No. 3:15-CV-1595, 2016 U.S. Dist. LEXIS 150236 (M.D. Pa. Oct. 31, 2016; *Frable v. Synchrony Bank*, No. 16-cv-0559 (DWF/HB), 2016 U.S. Dist. LEXIS 153702 (D. Minn. Oct. 17, 2016); *Coatney v. Synchrony Bank*, 2016 U.S. Dist. LEXIS 118768, 2016 WL 4506315, at *2 (M.D. Fla. Aug. 2, 2016); *Ricks v. Allied Interstate, LLC*, No. 3:16-cv-00205-HES-PBD, 2016 U.S. Dist. LEXIS 118956 (M.D. Fla. July 11, 2016); *Abplanalp v. United Collection Bureau, Inc.*, No. 3:15-cv-203, 2016 U.S. Dist. LEXIS 1762 (W.D.N.C. Jan. 7, 2016); *Acton v. Intellectual Capital Management, Inc.*, No. 15-4004, 2015 U.S. Dist. LEXIS 172149 (E.D.N.Y. Dec. 28, 2015); *Fontes v. Time Warner Cable, Inc., Civil No.* 14-2060-CAS, 2015 U.S. Dist. LEXIS 169580 (C.D. Cal. Dec. 17, 2015); *Kolloukian v. Uber Technologies, Inc.*, Civil No. 15-2856, 2015 U.S. Dist. LEXIS 174005, at *1-2 (C.D. Cal. Dec. 14, 2015); *Gensel v. Performant Techs., Inc.*, 2015 U.S. Dist. LEXIS 142303, 2015 WL 6158072, at *2 (E.D. Wis. Oct. 20, 2015). Not only is a stay appropriate, it avoids the potential for inconsistent rulings on the scope of the TCPA, which should be resolved by the D.C. Circuit in reviewing challenges to the 2015 FCC Order.

A stay would also benefit the parties and the Court without prejudicing Plaintiff. Discovery has not begun and no depositions have occurred. The stay would prevent the parties

and the Court from unnecessarily allocating substantial time and resources to conduct substantial, voluminous discovery and to litigate claims that the D.C. Circuit may ultimately decide are insufficient as a matter of law. The D.C. Circuit heard oral arguments in the Challenge Lawsuit on October 19, 2016, and therefore it is unlikely that staying this case pending resolution of the Challenge Lawsuit will lead to any significant delay in this action. Given the direct impact that the Challenge Lawsuit may have on this action, the Court should temporarily stay the case pending the D.C. Circuit's opinion.

## BACKGROUND

### A. The Facts Underlying Plaintiff's TCPA Claim.

Plaintiff filed a complaint against Ally, asserting that Ally placed calls to Plaintiff's cellular telephone phone using autodialer equipment without his consent in violation of the TCPA. (ECF 1, Compl. ¶¶ 30). Plaintiff alleges that on or about September 25, 2016 he orally requested that Ally cease and desist calling Plaintiff. (*Id.* at ¶ 18). Nevertheless, Plaintiff contends that Ally continued calling Plaintiff's cellular telephone using an ATDS. (*Id.* at ¶ 21-22).

### B. The 2015 FCC Order and the Challenge Lawsuit.

The 2015 FCC Order was narrowly issued after a contentious 3-2 vote. The 2015 FCC Order formally states the FCC's interpretation of numerous provisions of the TCPA and expands the law's scope in several areas, including its definition of an ATDS and its interpretation of what constitutes sufficient revocation of consent.

Under the 2015 FCC Order, any dialing equipment that "has the capacity to store or produce, and dial random or sequential numbers" is considered an ATDS for TCPA enforcement purposes, even if calls are not made using autodialing functions but instead were placed in a

4

"manual" mode that involves a human entering the numbers on the telephone. 2015 FCC Order at ¶ 10. Under the 2015 FCC Order, a telephone system is an ATDS even if additional software components need to be added to make it function as such. *Id.* at ¶ 18. The only limitation on this expansive "capacity" definition is that "there must be more than a theoretical potential that the equipment could be modified" into an automatic dialer. *Id.* Although the 2015 FCC Order stated that one of the primary goals was to provide clarity to businesses wishing to comply with the TCPA, the FCC expressly declined to provide specific guidance on what types of systems would be caught up by its definition, including smartphones. *Id.* at ¶ 21. The only specific example given of a system that would not be captured by its definition was a rotary telephone. *Id.* at ¶ 18.

The 2015 FCC Order as it presently stands requires a factual inquiry into whether dialing equipment used to call cell phone numbers has the capacity to store or produce and dial random or sequential numbers. At least one of the FCC commissioners believed that the FCC's ruling was "flatly inconsistent with the TCPA," thus "there is a legitimate possibility that the [D.C. Circuit] Court of Appeals may overturn that ruling." *Fontes*, 2015 U.S. Dist. LEXIS 169580 at *12 (citing Dissenting Statement of Commissioner Ajit Pai).

The 2015 FCC Order also stated that "consumers may revoke consent in any manner that clearly express[es] a desire not to receive further messages, and that callers may not infringe on that ability by designating an exclusive means to revoke." *Id.* at ¶ 63. Consent to receive autodialed and prerecorded calls may be revoked either orally or in writing, "at any time and through any reasonable means" and callers "may not limit the manner in which revocation may occur." *Id.* at ¶ 47.

Almost immediately, companies began filing petitions to challenge the FCC's interpretations of the TCPA. Of relevance to this lawsuit, the Challenge Lawsuit requests that the D.C. Circuit vacate, alter, or amend the 2015 FCC Order on two issues:

**1.     ATDS Equipment.**

The FCC interpreted the term ATDS to include any equipment that could *potentially* be modified to randomly or sequentially generate numbers, rather than equipment that *presently has capacity* to randomly and sequentially generate numbers. 2015 FCC Order at p. 8075 (Dissenting Statement of Commissioner Ajit Pai). Petitioners challenge this broad definition, arguing that it far extends the scope of equipment that is intended to qualify as an ATDS for purposes of the TCPA. Specifically, Petitioners argue that the FCC's "treatment of 'capacity' within the definition of an [ATDS] under the [TCPA] is arbitrary, capricious, and an abuse of discretion, and results in an approach that does not comport with a caller's constitutional rights of due process and freedom of speech and that disregards the applicable statute." *ACA Int'l v. FCC*, No. 15-1211, Amended Pet. for Review at pp. 3-4. Petitioners requested that the court "hold unlawful and set aside the [FCC's] treatment of 'capacity' … and compel the [FCC] to treat 'capacity' in a way that comports with a caller's rights of due process and freedom of speech." *Id.* at 4.

To prove his TCPA claims, Plaintiff must prove that Ally used an ATDS to call his cell phone. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The 2015 FCC Order, however, has caused significant confusion. Resolving the TCPA claims in this case requires a final resolution of the definition of an ATDS under the TCPA. Ally's potential liability to Plaintiff will be greatly affected by the D.C. Circuit's ruling.[3]

---

[3] Ally denies liability under the TCPA for other reasons that are not relevant to this Motion and thus, are not repeated herein. Further, its investigation of Plaintiff's claims is ongoing, as

2.     **Revocation of Consent.**

The FCC concluded that consumers who consent to prerecorded or ATDS-assisted calls may revoke that consent either orally or in writing, at any time and through any reasonable means. 2015 FCC Order at ¶¶ 56, 63. Petitioners argue that it was arbitrary and capricious for the FCC to refuse to establish any standardized, workable method of revoking consent in favor of allowing individuals to use whichever methods they prefer so long as the FCC or a jury later concludes it was "reasonable" under "the totality of the facts and circumstances," as this approach prevents callers from establishing any sort of centralized process for handling revocation requests. *ACA Int'l v. FCC*, No. 15-1211, Joint Brief for Petitioners at pp. 54-55.

Plaintiff asserts that he orally revoked consent to receive calls from Ally on or about September 25, 2016, but that Ally nevertheless continued calling him in violation of the TCPA. Although the 2015 FCC Order broadly indicates that oral revocation in any "reasonable" form may be sufficient, Petitioners have challenged this finding and have asked the court to define a set of uniform revocation procedures. If the D.C. Circuit holds that the FCC's expansive interpretation of revocation is unworkable and that revocation must be in a standardized or written form, Plaintiff's oral revocation of consent may be found insufficient on its face and could potentially bar his TCPA claims.

### ARGUMENT

A.     **Legal Standard**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153

---

discovery has not begun. Nothing in this Motion is intended to constitute an admission of liability for Plaintiff's TCPA claim if the D.C. Circuit does *not* vacate, alter or amend the 2015 FCC Order.

7

(1936); *see also Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) ("[t]he [d]istrict [c]ourt has broad discretion to stay proceedings as an incident to its power to control its own docket"). To determine whether an order to stay the proceedings is appropriate, the district court must consider "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Ankcorn*, No. 15-cv-1303, 2017 U.S. Dist. LEXIS 12149 at *6-7; *see also Genzyme Corp. v. Cobrek Pharms., Inc.*, 2011 U.S. Dist. LEXIS 16287, 2011 WL 686807, at *1 (N.D. Ill. Feb. 17, 2011). The moving party "bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) (citing *Landis*, 299 U.S. at 255).

**B.** **A Stay is Necessary and Warranted Pending the D.C. Circuit's Ruling**

Ally respectfully submits the Court should stay this action in the interest of judicial economy and efficiency pending resolution of the Challenge Lawsuit. The resolution of Plaintiff's alleged TCPA claims will turn on the ultimate definition of an ATDS under the TCPA and a determination of what constitutes sufficient revocation of consent, which are two of the specific issues being litigated in the Challenge Lawsuit.

As an initial matter, the length of the stay will be minimal. The D.C. Circuit heard oral arguments in the Challenge Lawsuit on October 19, 2016. It is expected that the D.C. Circuit will issue an opinion in the Challenge Lawsuit in the coming months. As such, the length of the stay will be minimal. *See Ankcorn*, No. 15-cv-1303, 2017 U.S. Dist. LEXIS 12149 at *8 (granting a stay pending the D.C. Circuit's ruling in *ACA International* and noting that a "delay

8

30525392

caused by the stay will likely be insubstantial giving that briefing and oral argument have already been completed in the D.C. Circuit").

### 1. Plaintiff will not be prejudiced by a stay.

First, there is no conceivable prejudice to Plaintiff if his claims are stayed for a short period of time pending resolution of the Challenge Lawsuit by the D.C. Circuit. *See Kolloukian*, 2015 U.S. Dist. LEXIS 174005 at *2 (staying case pending appeal of 2015 FCC Order, finding "[a] stay will not create undue prejudice to Plaintiff and the modest delay caused by the granted stay is reasonable in light of the implications the appellate decisions may have on this litigation"). "[D]elay, alone, is not dispositive on the issue of prejudice, particularly given that such delay is common to all stayed cases." *Everett Labs., Inc. v. River's Edge Pharms., LLC*, Civil Action No. 09-3458 (JLL), 2009 U.S. Dist. LEXIS 110945, at *11-12 (D.N.J. Nov. 24, 2009). Plaintiff's claims are not ones in which Plaintiff seeks or requires immediate relief. Nor does Plaintiff seek compensation for any actual injuries-in-fact that might be necessary to make Plaintiff whole. *See Ankcorn*, No. 15-cv-1303, 2017 U.S. Dist. LEXIS 12149 at *8 ("[a]dditionally, Plaintiff does not claim that he continues to receive telephone calls from Defendant, so there is no risk of ongoing harm to Plaintiff"). Moreover, the D.C. Circuit heard oral arguments in the Challenge Lawsuit on October 19, 2016 and therefore any delay will be minimal.

Indeed, Plaintiff will actually benefit from a stay. It is anticipated that, like Ally, Plaintiff will expend substantial resources litigating his claims and conducting discovery. Requiring the parties to move forward with the litigation at this stage would waste both parties' resources if the Challenge Lawsuit ultimately bars or narrows Plaintiff's claims against Ally.

**2.      A stay will simplify the issues in question and streamline the trial.**

Second, a stay will simplify the issues in question and streamline the proceedings because if the Challenge Lawsuit is decided in Petitioners' favor, it could be dispositive of Plaintiff's TCPA claims, eliminating the need for time-intensive and costly discovery and summary judgment proceedings. The D.C. Circuit's decision on the above issues could also substantially alter or narrow Plaintiff's claims, as well as the scope of permissible discovery.

If the case is not stayed, the Court will be forced to spend significant time and resources hearing and deciding discovery disputes, summary judgment motions, and conducting a settlement conference and scheduling conference to set deadlines for trial. In addition, if the stay is not granted, the parties will have to begin costly discovery on Plaintiff's claims, including written discovery and substantial document production, depositions, and expert discovery. All of these milestones will drain valuable judicial resources. Yet, the time and effort of both the Court and the parties may ultimately prove entirely unnecessary based on the D.C. Circuit's ruling on the 2015 FCC Order. *See Fontes*, 2015 U.S. Dist. LEXIS 169580 at *14 ("[i]f the Court of Appeals were to issue an order vacating the FCC's ruling in significant part after these deadlines had passed it would likely render moot substantial efforts by the parties as well as many of the Court's rulings. Accordingly, in light of the risk of wasting the resources of the Court and the parties as well as the high degree of uncertainty in this area of law, the Court finds that a stay is appropriate"). As the *Reynolds* court stated:

> Surely, the *ACA International* decision, whatever its outcome and scope, will clarify many of the issues raised by this litigation and ensure the determination of those issues under the correct legal standards, thus minimizing the risk of revisiting legal determinations on reconsideration or on appeal. In addition, the scope of the issues in dispute and the discovery relating thereto may be narrowed by the *ACA International* decision — an

10

> outcome that would save the parties from needless expenditures and promote judicial economy.

*Reynolds*, 2017 U.S. Dist. LEXIS 10462 at *5-6. Therefore, a stay pending resolution of the appeal of the 2015 FCC Order promotes judicial economy because the outcome of the Challenged Matter will provide clarification regarding issues in the case at bar and will thus streamline the proceeding .

### 3. A stay will reduce the burden of litigation on the parties and on the court.

Third, if this case is stayed pending clarification of the issues before the D.C. Circuit, also central to this action, the burden of litigation on the parties and on the court will be reduced. *See, e.g., Tyler v. Nationstar Mortg., LLC*, No. 4:15cv532-WS/CAS, 2016 U.S. Dist. LEXIS 14632, at *2 (N.D. Fla. Jan. 15, 2016) (holding that a stay "would limit what might prove to be unnecessary expenditures of time and resources on discovery"); *Eagle SPE NV 1, Inc. v. S. Highlands Dev. Corp.*, No. 2:12-CV-00550-MMD, 2013 WL 595821, at *3 (D. Nev. Feb. 15, 2013) ("Forcing the parties to go forward with this litigation and proceed with motion practice and discovery, which may ultimately be futile in light of the Nevada Supreme Court's decisions, would result in necessary expenses and a waste of the parties['] and the court's time and resources.") (citations omitted)*; Cardenas v. AmeriCredit Fin. Servs.,* No. C 09-04978 SBA, 2011 U.S. Dist. LEXIS 29105, at *12 (N.D. Cal. Mar. 7, 2011) (noting injury to defendant absent a stay insofar as "there can be no legitimate dispute that conducting further proceedings, up to and including preparing for and conducting a trial *that may ultimately be unnecessary*, would result in significant litigation costs – as well as the expenditure of judicial resources") (emphasis in original).

Therefore, a stay pending resolution of the appeal of the 2015 FCC Order will reduce the burden of litigation on the parties and on the court.

For these reasons, Ally respectfully requests that this Court grant a stay pending the D.C. Circuit's ruling on the 2015 FCC Order.

## CONCLUSION

For the foregoing reasons, Defendant Ally respectfully requests that the Court grant its Motion to Stay and enter an Order staying all proceedings in this case until the D.C. Circuit renders a decision on the above-mentioned issues in *ACA International v. FCC*, No. 15-1211 (D.C. Cir. filed July 10, 2015).

Dated: March 6, 2017         **TROUTMAN SANDERS LLP**

By:   s/ *Ethan G. Ostroff*
      Ethan G. Ostroff, Esq.
      TROUTMAN SANDERS LLP
      222 Central Park Avenue, Suite 2000
      Virginia Beach, Virginia 23462
      Phone: (757-687-7500
      Ethan.Ostroff@troutmansanders.com

      William P. Pipal (IL Bar. No. 6300918)
      TROUTMAN SANDERS LLP
      55 West Monroe Street, Suite 3000
      Chicago, IL 60603
      Phone: (312) 759-1933
      bill.pipal@troutmansanders.com

      *Counsel for Defendant Ally Financial Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2017, I served the *Memorandum in Support of Motion to Stay* upon all registered ECF parties to the action by causing it to be filed on the Court's ECF system.

**Counsel for Plaintiff**
Nathan C. Volheim
Mohammed O. Badwan
Omar T. Sulaiman
Ahmad T. Sulaiman
SULAIMAN LAW GROUP, LTD.
900 Jorie Boulevard, Suite 150
Oak Brook, IL 60523
Phone (630) 575-8181
nvolheim@sulaimanlaw.com
mbadwan@sulaimanlaw.com
osulaiman@sulaimanlaw.com
ahmad.sulaiman@sulaimanlaw.com

Dated: March 6, 2017          **TROUTMAN SANDERS LLP**

By:   s/ *Ethan G. Ostroff*
      Ethan G. Ostroff, Esq.
      TROUTMAN SANDERS LLP
      222 Central Park Avenue, Suite 2000
      Virginia Beach, Virginia 23462
      Phone: (757-687-7500)
      Ethan.Ostroff@troutmansanders.com

      William P. Pipal, Esq. (IL Bar No. 6300918)
      TROUTMAN SANDERS LLP
      55 West Monroe Street, Suite 3000
      Chicago, IL 60603
      Phone: (312) 759-1933
      bill.pipal@troutmansanders.com

      *Counsel for Defendant Ally Financial Inc.*

30525392